IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LISA O'MALLEY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-19-3273 |
| TRADER JOE'S EAST, INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Lisa O'Malley ("O'Malley" or "Plaintiff") brings this action against Defendant Trader Joe's East, Inc. ("Trader Joe's" or "Defendant"), alleging violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*; the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.*; the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*; and the Maryland Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't § 20-601 *et seq.* Specifically, the Plaintiff claims discrimination on the basis of her age and disability; that she was terminated in retaliation for taking leave as an accommodation for her disability; and that the Defendant willfully interfered with her right to return to her position after taking such leave. (*See* ECF No. 1.) Currently pending is the Defendant's Motion for Summary Judgment (ECF No. 35). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Defendant Trader Joe's Motion for Summary Judgment (ECF No. 35) is GRANTED, and summary judgment shall be ENTERED in favor of Trader Joe's on all counts of the Plaintiff's Complaint (ECF No. 1).

**BACKGROUND**

In ruling on a motion for summary judgment, this Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013). Plaintiff is a sixty-two-year-old resident of Maryland. (ECF No. 1 ¶¶ 13, 14.) She was an at-will employee of Defendant Trader Joe's, a specialty grocer, at the store in Annapolis, Maryland for more than fifteen years. (*Id.* ¶ 16; CR Decl. Ex. C and Ex. A, ECF No. 35-3.) Throughout her time at Trader Joe's, O'Malley received performance reviews. In 2010 and 2011, she received an overall rating of "frequently exceeds the company standards," and from July 2012 to February 2018, she received an overall rating of "meets expectations" and was given corresponding pay increases. (*See* Exs., 10, 13, 16, and 20, ECF Nos. 35-12, 35-15, 35-18, and 35-22.) Her February 2018 performance review included statements such as "no one receives more compliments from customers" and that "[n]o one is a better salesman." (Ex. 20, ECF No. 35-22.) However, this review also stated that "it [had] been a challenging six months." (*Id.*) It reported that the Plaintiff's managers had talked to her several times within the review period about certain negative customer interactions; the Plaintiff's "sales pitch" could be "easily seen as aggressive and angry;" and she had vocalized her unhappiness with management in the "backroom for all to hear," instead of properly bringing such complaints directly to her supervisors. (*Id.*)

This was not the first time O'Malley had received negative feedback from her supervisors, specifically with respect to her interactions with customers and co-workers. Her July 2006 performance review stated that she needed to be "more consistent" with her mood

and personal issues.  (July 2006 Performance Review, Ex. 7, ECF No. 35-9.)  An incident report in 2009 detailed allegations with respect to three different incidents of the Plaintiff's aggressive and unprofessional behavior toward supervisors and co-workers and provided her a "final warning."  (Incident Report dated 3/26/2009, Ex. 9, ECF No. 36-5 (SEALED).)  Her July 2010 performance evaluation stated that she needed to "be sensitive to some customers who may need a lighter, quieter approach."  (Ex. 10, ECF No. 35-12.)  Similarly, in her January 2011 performance review O'Malley was told that her approach with customers "does not always work for everyone" and it was suggested that she challenge herself to tailor her interactions to each customer.  (Ex. 11, ECF No. 35-13.)  In July 2012, her review stated that she had "exhibited a pattern of offending some [] customers," and that she needed to be "more careful [with her] words and actions and how they are perceived by customers."  (Ex. 13, ECF No. 35-15.)  Her January 2013 review advised her to "keep her cool" and not let a "grumpy customer frazzle [her] nerves" while serving at the demonstration counter.  (Ex. 14, ECF No. 35-16.)  O'Malley authenticated all of the relevant incident reports and performance reviews during her deposition.  (*See* O'Malley Dep., Ex. 2 at 169:5-170:16; 185:7-186:5; 188:12-189:6; 196:7-197:7; 211:2-212:19; 221:5-223:5, ECF No. 35-4.)

Despite this feedback, the Plaintiff continued to exhibit behavior that resulted in both customer and co-worker complaints.  Following a complaint from a co-worker in March 2015, a supervisor had to discuss with the Plaintiff "how she converses with fellow crew members." (CR Decl., Ex. 1F, ECF No. 36-1 (SEALED).)  In July 2017, a customer complained about an inappropriate comment O'Malley made in response to a question about whether the store carried a certain item.  (*Id.* (SEALED).)  Supervisors gave her a verbal warning in June 2016

about making inappropriate comments regarding politics in the workplace after coworkers complained that it made them feel uncomfortable. (*Id.* (SEALED).) In July 2016, her supervisor reported multiple incidents involving the Plaintiff's noncompliance with the supervisor's directions and "unprofessional behavior" that was "beneath a tenured crew member." (*Id.* (SEALED).)

A couple weeks after these incidents, the same supervisor noted that O'Malley had demonstrated a "tremendous turn around" and a positive "change in attitude," but by October 2017 another customer had complained about her behavior. (*Id.* (SEALED).) The customer complained that O'Malley made comments at the demonstration counter about politics and that she had felt "trapped" in an inappropriate political conversation. (*Id.* (SEALED).) Another incident followed in December. The Plaintiff was working the register and double charged the customer for an item. (*Id.* (SEALED).) She was then allegedly "nasty" with the customer, making her re-write a check twice because the Plaintiff said she could not read the check clearly. (*Id.* (SEALED).) The customer, an elderly woman, called the store about the incident, stating she was very upset and felt that O'Malley had been unreasonable. (*Id.* (SEALED).) A few days later, the Plaintiff received a written warning regarding an incident with a co-worker in front of other crew members and customers in which she spoke to her co-worker in a "threatening, uncomfortable tone." (Ex. 15, ECF No. 36-7 (SEALED).) The warning stated that her behavior in the incident was "beyond concerning" and that "[i]mmediate and sustained improvement" was required. (*Id.* (SEALED).)

O'Malley's year at Trader Joe's in 2017 also had its ups and downs. In June 2017, a customer complimented the Plaintiff and asked a supervisor "to thank her . . . from the bottom

her heart for her warmth and niceness during a difficult time for her family." (CR Decl., Ex. 1F, ECF No. 36-1 (SEALED).)   However, in September, three supervisors had to take the Plaintiff outside to have a conversation with her about "integrity" with respect to her neglecting to pay for items she took from the store and an "inappropriate and impolite" comment made at a staff meeting.   (*Id.* (SEALED).)   Her supervisors reported that O'Malley apologized for all of the issues and "took full responsibility for her behavior," but less than a month later, multiple customers once again complained about her behavior at the demonstration counter.   (*Id.* (SEALED).)   These incidents resulted in another written warning. (Ex. 17, ECF No. 36-8 (SEALED).)   This warning stated that her behavior was "unsatisfactory and unacceptable."   (*Id.* (SEALED).)   One customer stated that she had made him feel "personally and verbally attached" when she raised her voice at him after he asked why there was no food available at the counter.   (*Id.* (SEALED).)   Similarly, the other customer called to report that the Plaintiff had treated her rudely at the counter when she had asked about the availability of samples.   (*Id.* (SEALED).)   The Plaintiff allegedly responded by pushing a sample and then a full bag of the featured product at the customer, stating, "here, if you're in such a hurry."   (*Id.* (SEALED).)   A few days later, another customer complained about the Plaintiff's conduct at the demonstration station.   (CR Decl., Ex. 1F, ECF No. 36-1, (SEALED).)

The problems continued into 2018.   In January another customer complained about O'Malley's failure to treat a customer and crew member with respect.   (*Id.* (SEALED).)   There was another incident at the demonstration counter in March.   (*Id.* (SEALED).)   In May a customer called to say that her shopping experience was "spoiled" by the Plaintiff's loud

discussion of politics with other employees. (*Id.* (SEALED).) A couple weeks later, a customer called to say she had received poor customer service at the check-out counter where the Plaintiff did not make accommodations for the customer's electric cart and was short with the customer when she requested that certain items be placed in her insulated bag. (*Id.* (SEALED).) Following these two incidents in May, the Plaintiff received a *final* warning from store management on May 5, 2018. (*See* Incident Report dated 5/5/2018, Ex. 21, ECF No. 36-11 (SEALED); O'Malley Dep., Ex. 2 at 307:13-309:11, ECF No. 35-4.) This warning was clearly marked "Final Written Warning." (Ex. 21, ECF No. 36-11 (SEALED).) The report detailed the customer's complaints and stated:

> Lisa one of our 7 core values is to create a WOW Customer Experience every day. Failing to treat a customer with courtesy and respect directly goes against this Value. You are not meeting expectations at this time. Immediate and sustained improvement is required. Any further incidents may result in further disciplinary action up to and including termination.

(*Id.* (SEALED).) Despite this warning, on June 20, 2018 assistant manager Bryan Koscinski observed O'Malley in a conflict with a store customer and told her that if the customer called the store to complain "there was nothing [management] could do." (CR Decl., Ex. 1F, ECF No. 36-1 (SEALED).) That customer did ultimately complain. (*Id.* (SEALED).) On June 26, 2018, Koscinski reported that he had a discussion with the Plaintiff in which he told her this was "the final straw" and that he would be sitting down with the store manager Stacie May to discuss the "outcome." (*Id.* (SEALED).) Koscinki claims that at this point O'Malley got "defensive" and "threatened to sue [him] and the company." (*Id.* (SEALED).) He reported that she was "upset" and requested to leave early. (*Id.* (SEALED).)

On June 27, 2018 store manager May determined that O'Malley should be terminated, and the appropriate paperwork was prepared. (Incident report dated 6/27/2018, Ex. 23, ECF No. 35-25 (SEALED); May Dep., Ex. 38 at 82:1-83:2, ECF No. 35-40 (authenticating termination notice); Email from Store 650, Ex. 24, ECF No. 35-26 (email stated that Plaintiff's termination paperwork was ready to be delivered on June 27, 2018 but that the Plaintiff had called out for her shift); Koscinski Dep., Ex. 5 at 107:8-109:9, ECF No. 35-7 (authenticating email).)  However, May could not deliver the termination paperwork on June 27th, as earlier that morning, O'Malley called the store to report that she was not coming in for her 11:00 a.m. shift because she was not feeling well.  (CR Decl., Ex. 1F, ECF No. 36-1 (SEALED).)  She allegedly stated that she would not be quitting, so the Defendant would have to fire her.  (*Id.* (SEALED).)  The Plaintiff again called in sick on June 28, 2018, stating that she was going to the doctor, and at this time also allegedly stated that there was "no reason" for her to be on the schedule anyway if she had been fired, and that she would not be coming in "to be paraded around."  (*Id.* (SEALED).)

On the evening of June 28, 2018, the Plaintiff reported to Human Resources ("HR"), requesting to take protected leave under the Family and Medical Leave Act ("FMLA").  (*See* Compl. ¶ 45, ECF No. 1.)  The Plaintiff reported that her doctor had diagnosed her with severe anxiety, stress, dysphoria, and depression, and that she was temporarily unable to focus and without energy to complete tasks necessary for her job. (*Id.* ¶ 40.)  Her doctor's evaluation stated that the Plaintiff attributed her current symptoms to "recent events at work." (Ex. 26, ECF No. 36-13 (SEALED).)  The Plaintiff's Complaint also alleges that "[a]s a result of the harassment she experienced from the conduct of her immediate supervisors and the store

manager, [she] began suffering from severe anxiety, stress, dysphoria, and depression." (*Id.* ¶¶ 36, 37.)  Prior to June 28, 2018, the Plaintiff had not been diagnosed or treated for depression and anxiety.  (Ex. 27, ECF No. 36-14 (SEALED); O'Malley Dep., Ex. 2 at 326:7-327:20, ECF No. 35-4.)

Discovery produced an email from Koscinski to Peter Zettersten, Regional Vice President, and Virginia Castellano, a member of the HR department, on June 29, 2018.  (*See* Email from Store 650, Ex. 24, ECF No. 35-26; Koscinski Dep., Ex. 5 at 107:8-109:9, ECF No. 35-7 (authenticating email).)   In this email, Koscinki reported that the store had termination paperwork prepared for the Plaintiff and had planned to deliver such paperwork on June 27th, but that the Plaintiff had called out for both her shift that day and on June 28th, so they had not been able to deliver as planned.  (*Id.*)  He then reported that she had since requested FMLA-protected leave.  (*Id.*)  He attached the termination paperwork and stated that the store management was "unsure how to proceed."  (*Id.*)  Ultimately, the Plaintiff's request for FMLA-protected leave was approved (O'Malley Dep., Ex. 2 at 328:11-17, ECF No. 35-4; Ex. 28 ¶ 13, ECF No. 35-30), and the Plaintiff remained a paid employee of the company throughout her leave.  However, when the Plaintiff returned to work on August 29, 2018, the Defendant delivered her termination notice.  (*Id.* ¶ 52; CR Decl., Ex. 1F, ECF No. 36-1 (SEALED); May Dep., Ex. 38 at 87:2-22, 106:3-17, 107:8-20, ECF No. 35-40.)

On October 4, 2018, the Plaintiff filed a charge of discrimination and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC"), claiming age-related discrimination, a disabling condition, and termination following her request for accommodation for her disabling condition.  (ECF No. 1 ¶ 9.)  On September 20, 2019, the

EEOC notified O'Malley of her right to sue as the agency concluded that there was not reasonable cause to believe discrimination occurred. (*Id.*) O'Malley subsequently filed this lawsuit on November 13, 2019, alleging unlawful discrimination and retaliation by the Defendant against the Plaintiff in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*; the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.*; the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*; and the Maryland Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't § 20-601 *et seq.*

In support of her claims, the Plaintiff alleges in her Complaint that upon developing degenerative arthritis in her knee in 2017, she began receiving an "increased amount of scrutiny" of her job performance by her supervisors at work. (ECF No. 1 ¶¶ 24, 25.) In her interrogatory responses, she alleges that some of that criticism came from assistant manager Chris Lom, (Ex. 28 at No. 7, 8, ECF No. 36-30), who also allegedly told her she was not "hip" to what was going on in the world (Ex. A at 23:2-11, ECF No. 40-1), and made comments about her health, such as how her knees were declining (Ex. Z at 5-6, ECF No. 40-7). She asserts that other criticism came from other supervisors such as May and Koscinski and often pertained to complaints reportedly made by customers. (ECF No. 1 ¶¶ 26-28, 31.) The Plaintiff alleges that such complaints were never made against the Plaintiff, or at least that the complaints did not accurately describe the incidents, and that management fabricated customer complaints as a pretext for terminating Plaintiff because of her age and perceived disability. (*Id.* ¶¶ 34, 35; ECF No. 40 at 7-10.) She further alleges that she was replaced by a younger, non-disabled employee. (*Id.* ¶ 56.)

Discovery in this case has now been completed.  On October 26, 2020, Trader Joe's filed the presently pending Motion for Summary Judgment (ECF No. 35).

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).  This Court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility.  *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866-68 (2014) (per curiam).

However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). As this Court has previously explained, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## ANALYSIS

### I.     Age Discrimination (Count I)

In Count I of the Complaint, the Plaintiff alleges that she was willfully terminated by the Defendant because of her age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Maryland Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't § 20-601 *et seq.* (ECF No. 1 ¶¶ 64, 65.) Generally speaking, a plaintiff may avert summary judgment and establish a claim of intentional discrimination using "ordinary principles of proof by any direct or indirect evidence relevant to and sufficiently probative of the issue." *EEOC v. Western Elec. Co., Inc.*, 713 F.2d 1011, 1014 (4th Cir. 1983). Alternatively, a plaintiff may proceed under the proof scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and its progeny, under which the employee, after establishing a *prima facie* case of discrimination, must demonstrate that the

employer's proffered nondiscriminatory reason for the challenged employment action is in fact a pretext for discrimination. *Id.* Although *McDonnell Douglas* was a Title VII case, the United States Court of Appeals for the Fourth Circuit has consistently applied the *McDonnell Douglas* burden-shifting test to claims brought under the ADEA. *See Mitchell v. Data General Corp.*, 12 F.3d 1310, 1314 (4th Cir. 1993). The Maryland Fair Employment Practices Act ("FEPA") adopts the same substantive standards and burden of proof as Title VII and, thus, the ADEA. *Limes v. American Fed'n of State Cnty. & Mun. Emps. Union (Local 2250)*, No. PX-19-03225, 2020 WL 1914806 at *2 (citing *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 498 n.2 (D. Md. 2019)).

In this case, the Plaintiff has not presented any direct evidence of discrimination. Therefore, this Court must assess her claims under the *McDonnell Douglas* burden-shifting test. Under *McDonnell Douglas* test, a plaintiff must first present enough evidence to make a *prima facie* case of discrimination. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142-43 (2000). To establish a *prima facie* case, the plaintiff must show that she: (1) is a member of a protected class; (2) suffered an adverse employment action; (3) was at the time performing her job duties at a level that met her employer's legitimate expectations; and (4) the position remained open or was filled by a similarly qualified applicant outside the protected class. *See Hill v. Lockhead Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004). If the plaintiff is able to establish a *prima facie* case, the burden shifts to the defendant to produce evidence that the adverse employment actions were taken against the plaintiff "for a legitimate, nondiscriminatory reason." *Reeves*, 530 U.S. at 142 (citing *Tex. Dep't Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). Finally, the plaintiff is "afforded the 'opportunity to prove by a preponderance of

evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (quoting *Burdine*, 450 U.S. at 253).

It is undisputed that the Plaintiff is a member of a protected class based upon her age of sixty-two.  However, she cannot satisfy the other elements of her *prima facie* case of age discrimination.  First, the basis for her age discrimination claim is "additional scrutiny" by assistant manager Chris Lom, who allegedly "pulled Plaintiff aside to tell her not to discuss the President at work" and coached her on "how to speak to and of a newly hired transfer employee." (Ex. 28 at No. 7, 8, ECF No. 36-30.)  He also allegedly told her she was not "hip" to what was going on in the world (Ex. A at 23:2-11, ECF No. 40-1), and made comments about her health, such as how her knees were declining (Ex. Z at 5-6, ECF No. 40-7).  The Plaintiff claims that through these comments, Lom treated her "differently and in an offensive manner" and concludes that this was because of their generational/age differences.  (Ex. A at 23:2-11, ECF No. 40-1.)  However, whether Lom's comments were appropriate or not, they do not provide a plausible basis for a discrimination claim.  *See Burrel v. Parexel Intern., LLC*, No. WMN-12-1326, 2012 WL 4757836, at *4 (D. Md. Oct. 4, 2012) (collecting cases holding that complaints premised upon alleged rude treatment, disparaging remarks by a supervisor, personality conflicts, and other workplace annoyances are not actionable).  The "additional scrutiny" which O'Malley alleges is simply not an adverse employment action.

With respect to her termination in August 2018, O'Malley cannot establish that Defendant Trader Joe's took such adverse action for discriminatory reasons as she was not performing her job at a level that met her employer's legitimate expectations.  As detailed above, the Plaintiff was involved in numerous conflicts at work with co-workers as well as

customers that resulted in complaints to management.  Prior to her termination in June 2018, the Plaintiff was given a Final Written Warning, explicitly stating that the Plaintiff was "not meeting expectations" and that "[i]mmediate and sustained improvement [was] required." (*See* Incident Report 5/5/2018, Ex. 21, ECF No. 36-11 (SEALED); O'Malley Dep., Ex. 2 at 307:13-309:11, ECF No. 35-4.)  She was notified that "[a]ny further incidents [might] result in further disciplinary action up to and including termination." (*Id.*)  Despite this warning, the Plaintiff was once again the subject of a consumer complaint in June 2018. (CR Decl., Ex. 1F, ECF No. 36-1 (SEALED).)   "Whether an employee met [her] employer's legitimate expectations at the time of termination depends on the 'perception of the decision maker'" and "'not the self-assessment of the plaintiff.'" *Arthur v. Pet Dairy*, 593 Fed. App'x 211, 217 (4th Cir. 2015) (quoting *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274 (4th Cir. 2000)).  Defendant Trader Joe's clearly warned O'Malley that she was not meeting its expectations. (Incident report dated 6/27/2018, Ex. 23, ECF No. 35-25 (SEALED); May Dep., Ex. 38 at 82:1-83:2, ECF No. 35-40 (authenticating termination notice).)

The Plaintiff argues that this Court is precluded from granting summary judgment in favor of the Defendant on all claims because her performance evaluations show that she was meeting expectations throughout her time as a Trader Joe's employee. (*See* ECF No. 40 at 13.) This argument is without merit. The fact that the Plaintiff previously received ratings of "exceeds" or "meets" expectations, qualified for pay bumps, demonstrated improvement, or otherwise received positive feedback does not prove that she was meeting the Defendant's expectations with respect to interaction with customers.  O'Malley was the subject of numerous customer and co-worker complaints, and the fact that the Defendant Trader Joe's

did not choose to terminate or otherwise discipline the Plaintiff sooner does not establish that it did not have the right to do so in June 2018. As the Fourth Circuit held in *Arthur*, the failure of a defendant-employer to terminate or discipline a plaintiff-employee prior to the events resulting in termination is "simply not enough to genuinely dispute the considerable evidence of [the plaintiff's] repeated failures and negative performance." 592 Fed. App'x at 217 (citing *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 518 (4th Cir. 2006)). The fact that the Plaintiff was kept on for years despite customer and co-worker complaints does not prove that she was performing adequately but instead may show "a high degree of patience and consideration" on the part of Defendant Trader Joe's. *See Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980).

The Plaintiff disputes how some reported incidents were characterized, but overall she does not deny that she received numerous written warnings and was involved in conflicts that resulted in complaints. (*See* ECF No. 40.) Nor does she deny that she was working on the days associated with the incident report filed in May (*see* O'Malley Dep., Ex. 2 at 309:12-312, 313:1-4, ECF No. 35-4), that such events described in the report occurred (*see id.* at 316:11-317:12, 318:10-319:3), or that she received the Final Written Warning (*see id.* at 307:13-309:11). The Plaintiff cannot establish that she was meeting Defendant Trader Joe's legitimate expectations at the time of her termination as required to establish a *prima facie* case of discrimination.

Finally, the Plaintiff cannot show that her position was left open or that she was replaced by an individual outside her protected class. The Plaintiff argues that she has proven this element of the *prima facie* case because Trader Joe's is "always hiring." (ECF No. 40 (citing Ex. C. at 47:11-18, ECF No. 40-3).) This is insufficient. "A person is replaced only when

another employee is hired or reassigned to perform the plaintiff's duties." *Hudock v. Kent Cty. Bd. Of Educ.*, No. CCB-14-2258, 2015 WL 1198712, at *14 (D. Md. Mar. 16, 2015) (citing *Grosjean*, 349 F.3d at 336)). An individual "is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003). Having other workers present to handle various tasks a plaintiff may have performed does not show that an individual was "replaced." *Transamerica Ins. Fin. Corp.*, 854 F. Supp. 393, 398 (D. Md. 1993), *aff'd*, 27 F.3d 563 (4th Cir. 1994). The Plaintiff has not shown that one individual person was hired or took over her duties. (*See* Ex. 35, ECF No. 35-27; May Dep., Ex. 38 at 98:1-16, ECF No. 35-40; Koscinski Dep., Ex. 5 at 115:16-18, ECF No. 35-7; Zettersten Dep., Ex. 4 at 47:8-21, ECF No. 35-6.) Nor has she shown that her duties were even redistributed to co-workers outside her protected class. (*Id.*)

Whether a plaintiff seeks to prove discrimination on the basis of direct evidence, or through the *McDonell Douglas* framework, it remains the plaintiff's ultimate burden to prove that her age was the but-for cause of the alleged adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). As the Plaintiff cannot do so in this case, there are no genuine issues of material fact with respect to her age discrimination claim. O'Malley's claim for age discrimination fails as a matter of law.

## II.   Disability Discrimination (Count II)

In Count II of her Complaint, the Plaintiff alleges disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and FEPA, Md. Code Ann., State Gov't § 20-601 *et seq.* (ECF No. 1 ¶¶ 67-72.) As with claims for age

discrimination under the ADEA, the burden-shifting *McDonell Douglas* framework also applies to claims for disability discrimination under the ADA and FEPA.  *See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 57 (4th Cir. 1995) (applying burden shifting framework to ADA claim); *see also Sharma v. Howard Cty.*, No. JKB-12-2269, 2013 WL 530948, at *6 (D. Md. Feb. 12, 2013) (treating ADA and FEPA disability claim the same).  To establish a *prima facie* case in the context of disability discrimination, the Plaintiff must show "(1) she is disabled, (2) she was otherwise qualified for the position, and (3) she suffered an adverse employment action solely on the basis of the disability."  *Perry v. Comput. Scis. Corp.*, 429 F. App'x 218, 220 (4th Cir. 2011).  The Plaintiff alleges that her severe anxiety, stress, dysphoria, and depression diagnosed on June 28, 2018 rendered her disabled.  (ECF No. 1 ¶¶ 67-72.)  O'Malley contends that Trader Joe's was aware of this disabling condition and that she was terminated because of this disability.  (*Id.*)  There is absolutely no evidence in the record to show such knowledge on the part of the Defendant, and this claim is without merit.

O'Malley has simply presented no evidence that she was suffering from a recognized disability.  As the record provides on June 28, 2018, the Plaintiff reported to Human Resources ("HR") that her doctor had diagnosed her with severe anxiety, stress, dysphoria, and depression, and that she was temporarily unable to focus and without energy to complete tasks necessary for her job.  (*Id.* ¶ 40.)  Her doctor's evaluation stated that O'Malley attributed her current symptoms to "recent events at work."  (Ex. 26, ECF No. 36-13 (SEALED).)  The Plaintiff's Complaint also alleges that "[a]s a result of the harassment she experienced from the conduct of her immediate supervisors and the store manager, [she] began suffering from severe anxiety, stress, dysphoria, and depression."  (*Id.* ¶¶ 36, 37.)  Prior to June 28, 2018, the

Plaintiff had not been diagnosed or treated for depression or anxiety. (Ex. 27, ECF No. 36-14 (SEALED); O'Malley Dep., Ex. 2 at 326:7-327:20, ECF No. 35-4.) Furthermore, there is absolutely no evidence that she had indicated any anxiety or depression to Trader Joe's.

A "disability" is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The Fourth Circuit has clearly held that when the "major life activity" at issue is working a job, the inability to perform a *particular* job does not constitute a substantial limitation. *See Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 199 (4th Cir. 1997), *overruled on other grounds*, *Baird ex rel. Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999) (citing *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir. 1994) (holding that "[a]n impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one")). "Rather, 'substantially limiting' means that the impairment must 'significantly restrict' an individual's ability to perform a wide range of jobs." *Halperin*, 128 F.3d at 199 (internal citations omitted). Therefore, the fact that the Plaintiff suffered stress and anxiety as a result of the particular circumstances related to her employment at Trader Joe's does not mean that the Plaintiff was disabled.

Even if the Plaintiff did qualify as disabled by reason of her stress, anxiety, and depression caused by her employment at Trader Joe's, the Plaintiff cannot establish that she suffered an adverse employment action on the basis of this alleged disability because she cannot show that the Defendant was even aware of her disability when the decision to terminate her was made. An entry on the Defendant's system used to record comments about employees states that on June 26, 2018, Koscinski told the Plaintiff that a customer complaint was the "final straw" and that he and May would be sitting down to discuss the outcome. (*See*

CR Decl., Ex. 1F, ECF No. 36-1 (SEALED).)   Store manager May claims that she then made the decision to terminate the Plaintiff on June 27, 2018.   (Incident report dated 6/27/2018, Ex. 23, ECF No. 35-25 (SEALED); May Dep., Ex. 38 at 82:1-83:2, ECF No. 35-40 (authenticating termination notice)).   The termination notice clearly indicates it was written on this date.   (*Id.*)   In the June 29, 2018 email, Koscinski also asserted that the paperwork was prepared on June 27, 2018.   (Email from Store 650, Ex. 24, ECF No. 35-26.)   Koscinski further testified that the email as produced was accurate.   (*See* Koscinski Dep., Ex. 5, ECF No. 35-7 (authenticating email).)   On June 27, 2018, all the information the Defendant had with respect to the Plaintiff's health was that she felt unwell.   (*See* CR Decl., Ex. 1F, ECF No. 36-1 (SEALED).)   She was not diagnosed with her alleged disability until she met with her doctor on June 28, 2018, and she did not report this alleged disability until later that same day.   (ECF No. 1 ¶¶ 42, 45.)   The Defendant was not aware that the Plaintiff was suffering from stress, anxiety, dysphoria, or depression until at least June 28, 2018.

The Plaintiff attempts to create an issue of fact with respect to the Defendant's knowledge of her claimed disability by alleging that Trader Joe's did not in fact make the decision to terminate her until *after* June 28, 2018.   First, she notes that the termination notice is signed and dated August 29, 2018.   (Incident report dated 6/27/2018, Ex. 23, ECF No. 35-25 (SEALED).)   This is immaterial.   The date August 29, 2018 was simply the day that this notice of termination was *delivered* and *signed* by the Plaintiff—not the date it was written, or the date on which the termination decision was made.   (*Id.*)   The Plaintiff also claims that store manager May did not have the authority to terminate the Plaintiff on her own.   She claims that May needed approval from HR as well as her regional manager, and therefore, the decision

could not have been made on June 27, 2018 by May alone. (ECF No. 40 citing Ex. B at 88:13, ECF No. 40-2 and Ex. C at 18:11-19:8, ECF No. 40-3.) This mischaracterizes May's testimony; she clearly stated that it was her decision to terminate the Plaintiff. (May Dep., Ex. 38 at 89:3-9, ECF No. 35-40.) Trader Joe's corporate designee also stated that a store manager does not need to obtain approval to terminate a "crew member" like the Plaintiff. (*See* Genesta Dep., Ex. 3 at 102:11-15, ECF No. 35-5.) Trader Joe's clearly decided to terminate the Plaintiff on June 27, 2018 but permitted her paid FMLA leave until August 2018, when she sought to return to work.

Assuming the Plaintiff was suffering from a recognizable disability at the time the Defendant decided termination was appropriate, no reasonable jury could find from the facts as revealed through discovery that such alleged disability was the but-for cause of the Plaintiff's termination. For the same reasons as provided above with respect O'Malley's claim for age discrimination, she has not established that she was meeting Trader Joe's expectations at the time of her termination and cannot establish that she was "otherwise qualified for the position." In addition, there is absolutely no evidence that Trader Joe's was aware of her alleged disability at the time it made the decision to terminate her. The Plaintiff cannot establish a *prima facie* case for disability discrimination, and therefore, her claim fails as a matter of law.

### III.    Retaliation (Counts III and V)

The ADA and FEPA both prohibit retaliation against an employee who requests an accommodation for a disability. *See* 42 U.S.C. § 12203(a); Md. Code Ann., State Gov't § 20-606(f). Similarly, the Family and Medical Leave Act of 1993 ("FMLA") prohibits an employer

from retaliating against an employee for taking FMLA-protected leave. *See Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 550-51 (4th Cir. 2006).  To establish a claim for retaliation, "a plaintiff must prove (1) [she] engaged in protected conduct, (2) [she] suffered an adverse employment action, and (3) a causal link exists between the protected conduct and the adverse action." *Reynolds v. American Nat. Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012) (identifying elements of retaliation claim under the ADA); *Killian v. Kinzer*, 716 A.2d 1071, 1075 (Md. 1998) (identifying elements of retaliation claim under FEPA); *Yaskenko*, 446 F.3d at 551 (identifying elements of retaliation claim under the FMLA).  To establish a causal link between the alleged protected activity and adverse action, a plaintiff must prove "but-for" causation. *See Nelson-Rogers v. Kaiser Permanente*, No. GJH-17-3326, 2020 WL 917067, at *11 (D. Md. 2020).  Just as with claims for discrimination, claims for retaliation follow the *McDonnell Douglas* burden-shifting framework where the Plaintiff does not rely on direct evidence to assert her claim.  *See Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006); *Killian*, 716 A.2d at 1075.  If a plaintiff can establish the three elements of the *prima facie* case for retaliation, the burden of production shifts to the defendant to establish non-retaliatory reasons for the employment actions. *Kilian*, 716 A.2d at 1075.  If the defendant meets that burden, the burden of production shifts back to the employee to prove that the explanations are pretextual. *Id.*

In Count III of her Complaint, the Plaintiff alleges retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Maryland's Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't § 20-606, and in Count V she alleges retaliation in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* (ECF No. 1 ¶¶ 73-80, 86-90.)  Specifically, O'Malley claims that Trader Joe's

terminated her in retaliation for taking leave as an accommodation for her alleged disability. (*Id.* ¶ 78.)  However, the record does not show that the Plaintiff was discharged because she requested and took FMLA leave.  There is no dispute that the Plaintiff requested FMLA-protected leave, and therefore, engaged in protected conduct.  There is also no dispute that she was terminated, and therefore, suffered an adverse employment action.  The Plaintiff, however, cannot show a causal connection between her taking the protected activity and her termination.  As explained above, the decision to terminate the Plaintiff was made on June 27, 2018 and was, therefore, made *before* the Plaintiff requested to take her protected leave on June 28, 2018.

Apart from the fact that there was no causal link with respect to her termination, the Defendant has put forward a non-retaliatory reason for that termination, and O'Malley cannot show that its explanation is pretextual.  Trader Joe's has presented clear evidence that O'Malley was terminated for her ongoing performance issues with respect to her interactions with customers and coworkers.  (*See* Incident report dated 6/27/2018, Ex. 23, ECF No. 35-25 (SEALED); May Dep., Ex. 38 at 82:1-83:2, ECF No. 35-40.)  The record provides numerous examples of these issues, including the two incidents in May 2018 that resulted in the Plaintiff receiving a Final Written Warning and the customer complaint made days before the store manager made the termination decision.  The Plaintiff argues that the Defendant only took action on the Plaintiff's alleged deficiencies *after* she engaged in protected activity, but that is absolutely not supported by the undisputed record in this case.  (ECF No. 40 at 29.)  She further claims that any documents allegedly created in June 2018 were "manufactured only

after she engaged in protected activity and [were] created in violation of the Defendant's procedures." (ECF No. 40 at 32.)  That bald allegation is clearly not supported by the record.

First, in support of her claim that the timing of her termination itself creates an inference of pretext, the Plaintiff cites *Louis v. Sun Edison, LLC*, 797 F. Supp. 2d 691, 705 (D. Md. 2011) in which this Court found that where "performance-related problems were longstanding," and therefore, "the employer had tolerated them for a long time," a jury could infer that supposed performance concerns were a mere pretext for retaliation from the fact that the employer "suspiciously ceased tolerating the performance deficits around the time the employee engaged in protected activity."  However, in that case, there were no allegations that the decision to terminate the plaintiff was made before the plaintiff engaged in any protected activity.  *See id.* at 698-702.  Second, the Plaintiff's contention that the Defendant manufactured documents to make it appear that it made the termination decision before she took her protected leave is a mere hypothetical with no support in the record.  A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin*, 166 F. Supp. 2d at 375.  The Plaintiff cannot establish her *prima facie* case for retaliation, but even if she could, she also cannot establish that the Defendant's provided reason for her termination is pretextual.  Her claims for retaliation fail as a matter of law.

## IV.    Family Medical Leave Act Interference (Count IV)

In Count IV of her Complaint, the Plaintiff brings a claim for interference with her rights under the Family Medical Leave Act ("FMLA").  To establish a claim of interference, a plaintiff must prove: (1) she was an eligible employee; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave adequate notice of her

intent to take FMLA; and (5) she was denied FMLA benefits to which she was entitled.  *See Rodriguez v. Smithfield Packing Co., Inc.*, 545 F. Supp. 2d 508, 516 (D. Md. 2008).  It is undisputed that Defendant Trader Joe's granted Plaintiff's request for FMLA leave.  (O'Malley Dep., Ex. 2 at 328:11-17, ECF No. 35-4; Ex. 28 ¶ 13, ECF No. 35-30.)   The Plaintiff's claim for interference is based on the fact that she was not restored to her position upon return from leave.  (*See* ECF No. 1 ¶¶ 81-85.)

The FMLA does create an absolute right to "restoration," meaning that a person who takes FMLA leave is entitled to either be restored to the position she held before leave commenced, or to be restored to an equivalent position with equivalent employment benefits, pay, and other terms or conditions of employment upon her return from leave.  *See Yashenko*, 446 F.3d at 547 (citing 29 U.S.C. § 2614(a)(1)).   However, the FMLA is also clear that an employee is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave."   29 U.S.C. § 2614(a)(3)(B).  The FMLA, therefore, does not require an employee to be restored to her prior job after FMLA leave if she would have been discharged had she not taken leave.  *Yashenko*, 446 F.3d at 547.  As explained above, the record clearly indicates that the decision to terminate O'Malley was made before she requested and received FMLA leave.  The Plaintiff was simply not entitled to be restored to her position upon returning from such leave, and therefore, her claim for FMLA interference fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant Trader Joe's Motion for Summary Judgment (ECF No. 35) is GRANTED, and summary judgment shall be ENTERED in favor of Defendant Trader Joe's on all counts of the Plaintiff's Complaint (ECF No. 1).

A Separate Order follows.

Dated: December 17, 2020

_____/s/_____

Richard D. Bennett
United States District Judge